# DISTRICT OF COLUMBIA *v.* ROBINSON.*

CHRISTIANITY; SUNDAY OBSERVANCE; CONSTITUTIONAL LAW; STATUTES.

1. Our Nation, and the States composing it, are Christian, in policy, to the extent of embracing and adopting the moral tenets of Christianity as furnishing a sound basis upon which the moral obligations of the citizens to society and the state may be established.

2. While it is within the constitutional power of the legislature to impose upon the public the civil duty of observing one day in seven as a day of rest, it is beyond its power to impose the observance of Sunday as a purely religious duty.

3. The act of assembly of Maryland of 1723, chap. 16 (Abert's Comp. Stat. p. 176), was intended to enforce the observance of the Sabbath as a religious obligation, and is not only obsolete in this District, and not legally enforceable under our present constitutional form of government, but so much of it as prohibits labor on that day is impliedly repealed by various acts of Congress applying to this District and prohibiting particular kinds of labor on Sunday.

No. 1844. Submitted January 10, 1908. Decided January 21, 1908.

IN ERROR to the Police Court of the District of Columbia.
*Affirmed.*

---

*Sunday Observance.*—For note on question of Sunday labor, see *Quarles* v. *State*, 14 L.R.A. 192.

As to constitutionality of Sunday laws, see note to *Judefind* v. *State*, 22 L.R.A. 721.

The COURT in the opinion stated the facts as follows:

This cause was brought here on writ of error to the police court of the District of Columbia. An information was filed therein, charging the defendant, Charles Robinson, with the offense of working on Sunday. The statute under which the prosecution was sought to be maintained was an act of the Maryland legislative assembly of 1723, chap. 16, sec. 10, appearing in Abert's Compiled Statutes, D. C., p. 176. It is as follows:

That "no person whatsoever shall work or do any bodily labor on the Lord's Day, commonly called Sunday, and that no person having children, servants [or slaves], shall command, or wittingly or willingly suffer, any of them to do any manner of work or labor on the Lord's Day (works of necessity and charity always excepted), nor shall suffer or permit any children, servants [or slaves], to profane the Lord's Day by gaming, fishing, fowling, hunting, or unlawful pastimes or recreations; and that every person transgressing this act, and being thereof convict by the oath of one sufficient witness, or confession of the party, *before the police court* [a single magistrate], shall forfeit 200 pounds of tobacco, [$3.33½] to be levied and applied as aforesaid."

The complaint was in the usual form, signed, and sworn to by the corporation counsel. The defendant demurred to the complaint on several grounds, one of which was "that the said act of the Maryland legislature has never been enforced in this District, and by disuse has become obsolete." The police justice sustained the demurrer and dismissed the defendant. From that judgment the case was brought here on a writ of error by the corporation counsel.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the plaintiff in error:

1. How a statute can be declared to be invalid on account of its long disuse, or, in other words, obsolete, is a matter not

easily understood in this country. A statute once passed, here, remains in force until repealed by necessary implication or directly, or until it has expired by its own limitation. There has been no direct repeal of this statute, and the repeal, if any, must have been by implication.

The question has been asked, however, if this statute has not been repealed by the Code. This, logically, should be the first question discussed.

Sec. 1636 of the Code repeals "all acts and parts of acts of the general assembly of the State of Maryland general and permanent in their nature, * * * except: * * * * Third. Acts and parts of acts relating to * * * police regulations, * * * . Fifth. All penal statute authorizing punishment by fine only or by imprisonment not exceeding one year, or both. This is a penal statute authorizing punishment by fine only. Also, it is a police regulation. *Petit v. Minnesota,* 177 U. S. 164; 27 Am. & Eng. Enc. Law 390. The question has also been asked, How can a fine of 200 pounds of tobacco be enforced at the present day? The answer to this is not difficult. By the Maryland act of 1780, chap. 23, sec. 3 (Abert's Compiled Statutes, p. 476, sec. 164), fines of tobacco were computed into currency at the rate of 12 shillings 6 pence for every 100 pounds of tobacco; or in Spanish dollars, at the rate of 7 shillings 6 pence per 100 pounds of tobacco. By an act of Congress (1 Stat. at L. 346) the Spanish dollar was worth 100 cents. Two hundred pounds of tobacco in Maryland currency were worth 25 shillings. To find this value in dollars it is only necessary to divide the 25 shillings by $7\frac{1}{2}$ shillings, the value of a Spanish dollar, which is the value of 100 pounds of tobacco, worth 100 cents. The result is $3\frac{1}{3}$ dollars, the amount of the fine at the present time.

2. The statute has not been repealed. Various acts have been passed from time to time concerning different matters, but no comprehensive act which could, in any light, be regarded as covering or intending to the same ground, and thus work a repeal by implication of the act under discussion. Some examples of these acts are: Ordinance of the common council and

board of aldermen, September 17, 1869, requiring barber shops
to be closed on Sunday. Police Regulations, p. 92. Act of
July 29, 1892, imposing a fine for disturbing a religious con-
gregation. 27 Stat. at L. 324. Act of February 25, 1897, re-
quiring billiard and pool rooms to be closed on Sunday. 2
Supp. 562-3. An ordinance regulating the playing of musical
instruments on Sunday. Police Regulations, p. 43, sec. 3. An
act forbidding the sale of liquor on Sunday. March 3, 1899.
2 Supp. 978. An act forbidding the shooting or carrying of
guns on Sunday. June 15, 1878. 20 Stat. at L. 134. Abert,.
239; 17. Act June 3, 1892 (27 Stat. at L. 41), part of a
license law, providing: "Nothing contained in this act shall
authorize any person to keep his place of business open on Sun-
day for the sale of any merchandise whatever except medicines
in cases of necessity."

*Mr. Edward S. Duvall, Jr.,* for the defendant in error.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

We think a consideration of the one ground of demurrer
above cited will fully dispose of the questions involved in this
case.

That a State has full authority, in the exercise of its police
power, to legislate for the health, the morals, and the general
welfare of its people, cannot be disputed. Laws prohibiting
labor on the Sabbath Day have been upheld by the courts, not
that such laws are intended to limit the freedom of the citizen
as to his religious belief, or impose upon him any religious
duty incompatible with the free exercise of the dictates of con-
science, but to prescribe a rule of civil duty for all persons with-
in the jurisdiction of the State upon the Sabbath Day. The
legislature of a State, or Congress within the District of Col-
umbia, having the power to enact laws to promote good order,
and protect the comfort, happiness, and health of the people,
has the undoubted right to designate the day of the week called
Sunday, and prohibit the performance of any labor thereon

except works of necessity and charity.   That the first day of the week, or the Sabbath Day, is the one invariably selected as a day of rest in legislation of this character, has a special significance.   It is the day set apart for cessation from all secular employment by the Christian world.   All society, which is the outgrowth of Christian civilization, recognizes the necessity of the observance of the Sabbath Day.   Our Nation, and the States composing it, are Christian, in policy, to the extent of embracing and adopting the moral tenets of Christianity as furnishing a sound basis upon which the moral obligations of the citizen to society and the state may be established.   Recognizing that law can raise no higher standard of morals for the government of the individual than society itself, in the aggregate, has attained, it is only natural that the legislature should select, as a day for general cessation from labor, the same day that society, by common consent, has observed for centuries, whether that observance be the result of religious belief or otherwise.

The reason for legislation of this character, as generally recognized by the courts, is the necessity of the state providing for the protection of the health, morals and general welfare of its citizens.   As said by Mr. Justice Field in *Ex parte Newman,* 9 Cal. 502, when discussing the constitutionality of a statute regarding the observance of the Sabbath Day: "Its requirement is a cessation from labor.   In its enactment the legislature has given the sanction of law to a rule of conduct, which the entire civilized world recognizes as essential to the physical and moral well being of society.   Upon no subject is there such a concurrence of opinion, among philosophers, moralists, and statesmen of all nations, as on the necessity of periodical cessations from labor.   One day in seven is the rule founded in experience and sustained by science.   *   *   *   The prohibition of secular business on Sunday is advocated on the ground that by it the general welfare is advanced, labor protected, and the moral and physical well being of society promoted."   In *Bloom* v. *Richards,* 2 Ohio St. 387, Judge Thurman, delivering the opinion of the supreme court of Ohio, said: "We are

then, to regard the statute under consideration as a mere municipal or police regulation, whose validity is neither strengthened nor weakened by the fact that the day of rest it enjoins is the Sabbath Day. Wisdom requires that men should refrain from labor at least one day in seven; and the advantages of having the day of rest fixed, and so fixed as to happen at regularly recurring intervals, are too obvious to be overlooked. It was within the constitutional competency of the general assembly to require this cessation of labor and to name the day of rest.''

Thus it will be observed that it is not the policy of the law to enforce an observance of the Sabbath Day because of its general observance by the Christian world, but to enforce a cessation from labor on one day in seven. It is within the power of the legislature to fix any other day in the week and the law would be equally as effective for the purpose of its enactment. In the selection of the Sabbath Day the legislature has selected the day society generally recognizes as a day of rest; irrespective of any legal requirement. The constitutionality of this class of legislation can no longer be questioned. It has been universally upheld by the courts. *Mugler* v. *Kansas,* 123 U. S. 623, 31 L. ed. 205, 8 Sup. Ct. Rep. 273; *Minnesota* v. *Barber,* 136 U. S. 313, 34 L. ed. 455, 3 Inters. Com. Rep. 185, 10 Sup. Ct. Rep. 862; *Hennington* v. *Georgia,* 163 U. S. 299, 41 L. ed. 166, 16 Sup. Ct. Rep. 1086; *Petit* v. *Minnesota,* 177 U. S. 164, 44 L. ed. 716, 20 Sup. Ct. Rep. 666; *Ex parte Andrews,* 18 Cal. 678.

While it is the legitimate prerogative of the legislature to impose upon society the civil duty of observing one day in seven as a day of rest, it is beyond its power to impose the observance of Sunday as a purely religious duty. In other words, while the legislature may very properly prescribe and impose upon the citizen obligations of a civil nature, it cannot impose the same obligations as religious duties. If, therefore, the act in question was intended to enforce the observance of the Sabbath as a religious obligation, and not a civil duty, whatever power the colonial legislative assembly may have had to pre-

scribe and enforce such a law, we are of the opinion that it cannot be legally enforced under our present constitutional form of government. The Constitution of the United States guarantees to the citizen absolute religious freedom in that it forbids the enactment of any law respecting an establishment of religion, or that will prohibit the free exercise thereof.

With this distinction before us, let us analyze the manifest object and purpose of the statute before us. The act of which this section was a part was entitled "An Act to Punish Blasphemers, Swearers, Drunkards, and Sabbath Breakers, and for Repealing the Laws Heretofore Made for Punishing such Offenders." The 1st section provided "that if any person shall hereafter, within this Province, wittingly, maliciously, and advisedly, by writing or speaking, blaspheme or curse God, or deny our Saviour Jesus Christ to be the son of God, or shall deny the Holy Trinity, the Father, Son, and Holy Ghost, or the Godhead of any of the Three Persons, or the unity of the Godhead, or shall utter any profane words concerning the Holy Trinity or any of the Persons thereof, and shall be thereof convict by verdict or confession, shall, for the first offense, be bored through the tongue and fined 20 pounds sterling;  *  *  *  for the second offense,  *  *  *  shall be stigmatized by burning in the forehead with the letter B, and fined 40 pounds sterling;  *  *  *  and that for the third offense, the offender, being convicted as aforesaid, shall suffer death without *the* benefit of *the* clergy." The 2d section related to profane swearing in the presence of certain officers named, among which were ministers, vestrymen, and church wardens. The 3d section prohibited drunkenness. The other sections, aside from the one here under consideration, related to the manner in which trials should be conducted, and the manner of enforcing the collection of fines and the infliction of punishment. The act then provided for the repeal of certain acts providing for "Sanctifying and Keeping Holy the Lord's Day, commonly called Sunday, and for the Punishment for Blasphemy, Profane Swearing, Cursing, and Drunkenness."

Taking the entire act into consideration, we are forced to the

conclusion that the object of this statute undoubtedly was to prevent a desecration of the Lord's Day, as it was called in the act, and not primarily to enforce a day of rest, which is the present policy of such laws as defined by the courts. The statute before us is part of a peculiar class of legislation that was enacted in many of the colonies during the seventeenth and the early part of the eighteenth centuries. The object of such legislation was not to bring about the purpose sought to be accomplished by the legislation of the present day, providing for a cessation from labor on one day in seven, but to enforce a strict religious observance of the Sabbath Day. Such laws were the outgrowth of the system of religious intolerance that prevailed in many of the colonies. They prescribed religious, and not civil, duties. With the adoption of the Constitution and the establishment of constitutional governments in the States of the Union, these laws dropped into disuse, and any attempt to enforce them was frowned upon by the courts. In the States and the District of Columbia the legislatures and Congress have enacted laws in place of these colonial statutes, that define the civil duties of the citizen in the observance of one day in seven (Sunday) as a day of rest. It is defined as a duty the citizen owes to society in promoting the health, morals, and general welfare of the people. The duty of observing the Sabbath Day, as a religious obligation, is left with the individual, and is a matter beyond the pale of legislative interference.

It was admitted at bar that no former attempt had ever been made to enforce the statute in question, though it has been on the statute books of the District of Columbia for more than one hundred years. Numerous acts of Congress applying to the District of Columbia have been passed forbidding labor on Sunday, such as requiring barber shops to be closed, forbidding disturbance of religious meetings, requiring billiard and pool rooms to be closed on Sunday, regulating the playing of musical instruments on Sunday, forbidding the sale of liquor on Sunday, forbidding the shooting or carrying of guns on Sunday, forbidding the keeping of places of business open on Sunday for the sale of merchandise, except the sale of medicines

in cases of necessity, and other similar acts forbidding the performance of labor on Sunday. Inasmuch as Congress has so generally defined the particular kinds of labor that it deems proper to prohibit within the District on Sunday, and these acts have been passed without reference to, or amendment of, the law in question, it is proper to regard the statute before us not only as obsolete, but as repealed by implication in such essential parts as an advanced and enlightened civilization justifies with due regard for the personal liberties of the citizen.

It is unnecessary to consider the other objections the defendant interposed to the sufficiency of the information. The judgment of the Police Court is              *Affirmed.*